### UNITED STATES of America
### v.
### 127,295 COPIES OF MAGAZINES, MORE OR LESS, including copies of magazines ENTITLED, "AMOR", Issue Numbers 6, 7, 8, 9, 10, 11, 12 et al.
### Civ. No. 20078.

United States District Court
D. Maryland.
Dec. 9, 1968.

Stephen H. Sachs, U. S. Atty., and Clarence E. Goetz, Asst. U. S. Atty., Baltimore, Md., for the United States.

Robert Eugene Smith, Towson, Md., for claimant, Select Imports, Ltd.

Before THOMSEN, Chief Judge, and NORTHROP, District Judge.

**PER CURIAM:**

In this proceeding under section 305 of the Tariff Act of 1930, 19 U.S.C.A. § 1305, the government seeks condemnation and forfeiture of 127,295 copies of magazines imported from Scandinavia, on the ground that they are obscene material the importation of which is prohibited by that section. The magazines which are now in the custody of the District Director of Customs of Baltimore comprise 82 issues of 22 separately titled magazines.

Select Imports, Inc., a Maryland corporation with its principal office in California, claimant, consignee of the magazines, has moved to dismiss the complaint on four grounds, namely: (1) that 19 U.S.C.A. § 1305 is unconstitutional on its face; (2) that said section is unconstitutional as applied in this case; (3) that other copies of some of the magazines have been held not obscene by another district court, and the government is barred by res judicata from proceeding against those magazines; and (4) that the magazines are not obscene.

■ 1. Section 1305 is facially constitutional. The controlling law is contained in United States v. 56 Cartons Containing 19,500 Copies of Magazine Entitled "Hellenic Sun", 373 F.2d 635 (4 Cir. 1967), reversed on other grounds. sub nom. Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967), and in United States v. 392 Copies of Magazine Entitled "Exclusive", 253 F.Supp. 485 (D.Md.1966), affirmed, 373 F.2d 633 (4 Cir. 1967), reversed on other grounds sub nom. Central Magazine Sales v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49 (1967).

■ 2. The magazines were entered on September 20, 1968, and "seized", as that word is used in the customs statutes, on October 16. Claimant filed a complaint against the Collector in this Court on October 31, which was not

pressed, because the government filed the libel in this case on November 12.[1]

The interval between the entry and the seizure seems long. But the flow of such books has risen from a few thousand copies entered at one time, as in 1966, to a torrent of over 127,000 at a time, comprising 82 separate issues. The physical problem of inspecting the many copies is aggravated by the fact that the customs officers are required to apply to each issue a test which the most learned judges have found baffling.[2] For the reasons stated in the "Hellenic Sun" and "Exclusive" cases, supra, 19 U.S.C.A. § 1305 has not been unconstitutionally applied in this case because of any unreasonable delays.

3. There is no authoritative decision on the application of the rule of res judicata in such a case as this. Arguments both ways suggest themselves. In view of the decision of this Court on the fourth point raised by claimant, it is not necessary to decide the res judicata question in this case. The Court has given respectful consideration to the conclusions of the judges who have found some of these magazines not obscene.

4. As was to be expected, the successive decisions by the Supreme Court have emboldened the purveyors of pornography to import magazines which go further and further beyond the prevailing standards in this country. The present importation is a far cry from the

nudist magazines of the 1950's,[3] and the typical girlie magazines of 1965.[4]

The magazines involved in the present case are lewder than any magazines heretofore considered by this Court, including the magazine "Exclusive" and the magazines involved in United States v. 4,400 Copies of Magazines, 276 F.Supp. 902 (D.Md.1967). The magazines in the present importation appeal more blatantly to the prurient interest of the average man or boy, and go further beyond the prevailing standards of candor. They have no social value. They are clearly obscene in the ordinary sense of the word. This Court has no doubt that they would be considered obscene by almost any jury and by almost any judge not bound by the present interpretation of the First Amendment by the Supreme Court. In a few of the magazines Lesbian activities are suggested, but none of them contains any pictures of sexual intercourse.

It is incredible that those who adopted the First Amendment intended that it should license purveyors of filth to flood the country with the kind of material now held protected. But the duty of the inferior federal courts is to apply, as best we can, the standards the Supreme Court has decreed with respect to obscenity. The task is difficult because to us, as to most judges, the test which must be applied here, like the Peace of

1. Before and after the filing of the libel, indeed before the seizure, counsel for claimant supplied the judges of this Court with voluminous memoranda, which he has supplemented by a brief before the hearing on his motion to dismiss and another brief thereafter.

2. In the most recent case called to our attention, United States v. A Motion Picture Film Entitled "I am Curious—Yellow", 404 F.2d 196 (2 Cir., November 26, 1968), the author of one of the three opinions filed by a panel of three judges, noted that "a scholarly article has deduced from the spate of decisions in 1966 no less than 'five separate and contradictory tests'. Magrath, The Obscenity Cases: Grapes of Roth, 1966 Sup. Court

Rev. 7, 56–57." The opinions since 1966 have not clarified the situation, as the opinions in the case just cited demonstrate. See also United States v. Four (4) Books, 289 F.Supp. 972 (C.D.Cal., September 10, 1968).

3. See Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352 (1958), reversing 101 U.S.App.D.C. 358, 249 F.2d 114 (1957).

4. See United States v. 25,000 Magazines, Entitled "Revue", etc., 254 F.Supp. 1014 (1966). Something less than a quarter of those magazines contained some pictures which this Court and the Fourth Circuit considered obscene, but most of them were not obscene even under the standards then applicable.

God, passeth all understanding. See note 2, above.

■ In Redrup v. New York, the Supreme Court said, 386 U.S. 767, at 769, 87 S.Ct. 1414, at 1415, 18 L.Ed.2d 515:

"In none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. See Prince v. [Com. of] Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645; cf. Butler v. State of Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412. In none was there any suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. Cf. Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 * * *. And in none was there evidence of the sort of 'pandering' which the Court found significant in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31."

It appears, therefore, that persons to whom the magazines will be offered commercially, and the methods by which they will be offered, are factors to be considered in determining whether their dissemination is protected by the First Amendment.

The government offered in this case circulars distributed by mail by a California company associated with the importer herein. These circulars, and the interior envelope in which they were contained, which advertise some of the same magazines issues involved in this case, make it highly probable that these magazines will be merchandized by a blatant appeal to prurient interest.

Nevertheless, since the magazines involved in the present case have not yet been admitted into the United States, we cannot be sure how they will be marketed—(a) whether they will be sold to juveniles, either by mail solicitation or over the counter, (b) whether they will be offered for sale in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to them, and (c) whether they will be offered for sale in a manner which will amount to pandering.

■ This Court is, therefore, of the opinion that it cannot order the condemnation and forfeiture of these magazines at this time. On the other hand, this Court is of the opinion that if the magazines involved in this case are sold to juveniles, or are offered for sale in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to them, or if they are offered for sale in a manner which amounts to pandering within the principles stated in Ginzburg v. United States, 383 U.S. 463, at 465–466, 467, 470–471, 474–476, 86 S.Ct. 942, 16 L.Ed.2d 31, they would not be entitled to the protection of the First Amendment. See Donnenberg v. State, 1 Md.App. 591, 232 A.2d 264, 271 (1967).

Claimant's motion to dismiss must be granted. The Court will enter an appropriate order.