111 N.J. Super. 489 (1970)
268 A.2d 753
VINCENT P. KEUPER, MONMOUTH COUNTY PROSECUTOR, PLAINTIFF,
v.
EDWARD N. WILSON AND ABERT LARGE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 8, 1970.
*491 Mr. Elliot L. Katz, Assistant County Prosecutor, for plaintiff.
Mr. Robert E. La Mura and Mr. Stanley Yacker for defendants (Mr. Robert E. La Mura, Attorney).
LANE, J.S.C.
The Monmouth County Prosecutor instituted this action under N.J.S.A. 2A:115-3.5 to enjoin the showing and exposing to public view of the motion picture "Man and Wife" and for an order compelling the defendants to surrender to him the film for destruction in accordance with N.J.S.A. 2A:115-3.7. The matter is before the Court on final hearing.
The defendant Edward N. Wilson is the owner and operator of the Strand Theatre in Keyport, New Jersey. The defendant Albert Large (improperly designated as Abert Large) is employed by Wilson as a motion picture projectionist.
On Wednesday, June 10, 1970 the film was first shown at the theatre. On Friday, June 12, 1970 a warrant for the arrest of Wilson was obtained upon complaint of a detective of the Keyport police department charging a violation of N.J.S.A. 2A:115-2. Wilson was arrested that evening, and at that time the film was seized. On June 17, 1970 Wilson, Large and Institute of Adult Education, the owner of the film, filed a complaint in this Court (Docket C-2928-69) naming as defendants the chief of police of Keyport, the detective who signed the complaint, the magistrate who issued the warrant and the prosecutor of Monmouth County, seeking a judgment restraining the defendants from interference with the exhibition of the film on the ground that it was not *492 obscene and its showing was constitutionally protected under the First and Fourteenth Amendments of the United States Constitution. An order to show cause issued that day directing the defendants to show cause on June 22, 1970 why they should not be restrained from making any arrests or issuing any warrants for alleged violation of N.J.S.A. 2A:115-2. After the hearing on the order to show cause the Court reserved decision. The following day, June 23, 1970, the Monmouth County Grand Jury handed up an indictment for a violation of N.J.S.A. 2A:115-2. Although the original film had been seized and was in the possession of the prosecutor, Wilson obtained another copy and resumed showing of the film on June 23, 1970. The complaint herein was filed on June 24, 1970 alleging that the film "Man and Wife" was obscene and seeking to enjoin its showing. An order to show cause for a preliminary injunction to restrain the showing of the film until the final hearing was issued returnable July 2, 1970. A request for a temporary restraining order was denied. On June 25, 1970 a second warrant was issued for the arrest of Wilson upon complaint of an investigator of the Monmouth County prosecutor's office alleging a violation of N.J.S.A. 2A:115-2. The film then being shown was not seized. Wilson filed a petition in Docket C-2928-69 on June 26, 1970 seeking to enjoin the defendants from any further arrests of him or his employees on the ground that such further arrests constituted harrassment and intimidation calculated to chill his First Amendment rights and those of the public. An order to show cause was issued returnable July 2, 1970 containing a temporary restraint. On June 30, 1970 the defendants filed an answer herein denying the material allegations of the complaint and counterclaimed for a declaration that the motion picture is not obscene. The answer demanded a hearing within one day in accordance with N.J.S.A. 2A:115-3.6. The matter came before the Court for final hearing on July 1, 1970. The order to show cause in this action for a preliminary injunction has been abandoned. In Docket C-2928-69 the defendants (one of whom is the *493 plaintiff herein) now have consented to a preliminary injunction enjoining further arrests.
There was no pretrial conference. However, at the outset of the trial the parties agreed to the Court's statement of the issues involved:
(1) Does the dominant theme of the film taken as a whole appeal to a prurient interest in sex; that is, a shameful or morbid interest in sex, going substantially beyond customary limits of candor in description or representation?
(2) Is the film patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; community being nationwide (State v. Hudson County News Co., 41 N.J. 247, 262-266 (1963))?
(3) Is the film utterly without redeeming social value?
To be entitled to a judgment that the film is obscene and therefore not protected by the First Amendment, the plaintiff must prove by a preponderance of the evidence the affirmative of each of the three issues. If the plaintiff does not sustain that burden, it becomes the burden of the defendants to prove by a preponderance of the evidence the negative of any one of the three issues to be entitled to a judgment on the counterclaim.
Although N.J.S.A. 2A:115-1.1 defines obscenity, such definition must stay within the constitutional bounds laid down by the United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), as refined in A Book Named "John Cleland's Memoirs of a Woman of Leisure" v. Attorney General of the Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) (Memoirs). See Mishkin v. New York, 383 U.S. 502, 507-508, 86 S.Ct. 958, 962-963, 16 L.Ed.2d 56, 61 (1966). The issues, therefore, are based upon the definition of obscenity stated in Roth and Memoirs.
The Court viewed the film which runs for 65 minutes. It begins with an introduction quoting from Dr. T.H. Van de Velde, the author of "Ideal Marriage." There is an explanation *494 of the physical and psychological sexual relationship between a man and his wife, and an explanation of the male and female reproductive organs and their functions. The balance of the film is devoted to a graphic demonstration of ten positions for sexual intercourse. There are four unclothed participants in the demonstration, the same man and the same woman always being paired. The impression is given that each couple is man and wife. During the demonstration there is dialogue at the beginning of each position pointing out the advantages of the particular position both as to procreation and as to enjoyment of the partners. The dialogue does not continue during the entire demonstration of any one position. The testimony shows that none of the positions demonstrated is considered abnormal. There is no discussion or demonstration of techniques in sexual arousal before or during intercourse. With the exception of an office scene for the clinical explanation the set remains the same, a well lighted bed.
The plaintiff presented only one witness, Louis B. Youmans, who was called to testify as an expert witness on each of the three issues. Mr. Youmans testified that he was an educator. After graduating from the Long Branch High School he attended the University of South Carolina for two years and then obtained a Bachelor's degree in English from Monmouth College in 1963 and a Master's degree in English at Rutgers-The State University in 1964. From June 1964 to September 1966 he was self-employed as a private tutor and then from September 1966 to March 1970 was employed by Monmouth College as an instructor in English Literature. From September 1969 presumably to the end of the school year he did a certain amount of teaching in English at the Ocean County College. Except for the two years while attending the University of South Carolina and for a short time during his youth when he was in Vermont, he has been a resident of the State of New Jersey. There was no evidence that he had done any traveling. He testified that because he was an educator he was qualified as *495 an expert to testify as to the issues primarily on the ground that the film purported to be educational.
The defendants objected to Mr. Youmans' qualifications as an expert witness to testify as to any of the three issues. The Court reserved decision on the objection which must now be disposed of.
In City of Newark v. Humphres, 94 N.J. Super. 384, 390 (Cty. Ct. 1967), it was held that expert opinion is required as to each of the three tests. If expert testimony is not a requirement for a finding of obscenity, First Amendment rights would depend upon subjective determinations by juries or judges as the case may be. The question is not whether the work under consideration taken as a whole appeals to a pruient interest in sex to a particular jury or a particular judge but rather to the average man. Roth v. United States, supra, 354 U.S. at 489, 77 S.Ct. at 1311, 1 L.Ed.2d at 1509. This Court does not feel that it is in a position to judge whether the film has a prurient appeal to the average man without expert testimony. See Memoirs, supra, 383 U.S. 413, 427, 86 S.Ct. 975, 981-982, 16 L.Ed.2d 1, 10. (concurring opinion of Justice Douglas). Contemporary community standards on a nationwide basis cannot be based upon the limited knowledge of the Court. There must be a basis in the record to support a finding of what they are and of whether the work under consideration affronts such standards. That basis can only be supplied by expert testimony. Whether a work has a redeeming social value cannot be left to the limited knowledge of a judge or jury. A particular work may have a redeeming social value in an esoteric field. A determination of the issue cannot be made without the assistance of expert testimony that is subject to cross-examination.
Was Mr. Youmans qualified as an expert as to any of the three issues? To qualify as an expert one must have "peculiar knowledge or experience not common to the world which renders their opinions founded on such knowledge or experience any aid to the court or jury in determining the *496 questions at issue." Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 142 (1950). "* * * [T]he opinions of experts must be founded either upon facts within their own knowledge or, in the case of a hypothetical question, upon facts and inferences supportable by the proofs  i.e., evidence which there is a fair possibility the jury will accept." Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85 (App. Div. 1961). The fact that one may be an expert in one field does not qualify him to testify as an expert in a field in which it is not shown he is qualified. Zampieri v. River Vale Tp., 29 N.J. 599, 611 (1959); Newman v. Great American Ins. Co., 86 N.J. Super. 391, 399 (App. Div. 1965). How expertise has been acquired is not important. "It is settled in this State that a person may be qualified to testify as an expert either by study without practice or by practice without study." State v. Campisi, 42 N.J. Super. 138, 148 (App. Div. 1956), rev'd on other grounds 23 N.J. 513 (1957).
In Hewitt v. Maryland State Board of Censors, 243 Md. 574, 221 A.2d 894 (Ct. App. 1966), the Court discussed the qualifications necessary for a witness to testify as an expert in an obscenity case:
* * * The average person, however, is certainly not qualified to give expert testimony in this area. The fact that he might have a degree in education, sociology or theology does not, per se, make him qualified; nor does the mere fact that he is a social worker, a probation officer, a teacher, a priest, minister or rabbi. Something more is required. He need not, of course, be an authority but there must be an affirmative showing (and an opportunity to cross-examine thereon) that he is possessed of some special and sufficient knowledge and information, however acquired, which would elevate his opinion above the realm of conjecture, speculation or personal reaction, in respect of any one of the three elements of the test promulgated in Roth and expanded most recently in Fanny Hill. His knowledge and information may have been acquired in his business or in his profession or it might be the by-product of an avocation, sport or hobby. He may have sought it assiduously or he may have absorbed it casually. Mr. Crawford H. Greenewalt, for instance, is a chemist by profession. His occupation is chairman (formerly president) of E.I. du Pont de Nemours & Co. He is not an ornithologist. Yet there is probably not a court in the world which would not declare him qualified to testify as an expert on the coloring, configuration, classification *497 and flight characteristics of hummingbirds. The term `expert' has many lights and shadows. It can denote a man who is a recognized authority and, perhaps as accurately, a fellow who once went to the city. * * * [221 A.2d 900]
The Court then discussed the testimony that was adduced before the lower court and held that a supervisor of a group of probation officers in the Division of Juvenile Causes of the Baltimore Courts, a director of the Criminal Justice Commission, a rabbi, an ordained minister of the Congregational United Church, a Roman Catholic priest, a consultant in the Division of Juvenile Causes of the Baltimore Courts, and a housewife did not qualify as experts by any standards.
Mr. Youmans did not qualify as an expert as to any of the three issues involved in this matter. The mere fact that he had been an English instructor (his only claim to expertise) certainly did not qualify him to testify as to what would appeal to a prurient interest in sex in the average man. There was no testimony that by study or by experience he had any knowledge of the effect on the average man of scenes depicting sexual intercourse. He had no knowledge whatsoever of contemporary community standards. He had made no study of public acceptance of films showing sexual intercourse and had no experience as to such acceptance or lack thereof. If the subject of the law suit had been a work of literature, he might have been qualified to testify as to whether it had any redeeming social value notwithstanding the inclusion of allegedly obscene passages. Certainly, however, he was unqualified to testify as to whether a film dealing in sexuality related to marriage presented as educational was utterly without redeeming social value. There was no evidence that he had made a study of or had experience with marriage or sex problems so as to be able to judge whether the film would have a redeeming social value related to sexual relationship in marriage. The objection will be sustained, and his testimony will be stricken.
It follows that the plaintiff has failed to sustain the burden of proof that the film is obscene. The complaint, therefore, will be dismissed.
*498 By the counterclaim the defendants seek a judgment that in fact the film is not obscene. The prayer in the counterclaim is cognizable in this Court. State v. Baird, 50 N.J. 376, 378 (1967); Sanitary Vendors, Inc. v. Byrne, 40 N.J. 157 (1963); Lucky Calendar Co. v. Cohen, 19 N.J. 399, 409 (1955), 20 N.J. 451 (1956). See also, Anderson v. Sills, 56 N.J. 210 (1970).
The defendants called four witnesses to testify as experts.
Dr. Alven B. Judd, certified by the American Board of Psychiatry and Neurology in psychiatry and child psychiatry, is a practicing psychiatrist, has done psychotherapy with couples having marital difficulties, and has worked in the field of the relationship between violence and sex. In his professional capacity he has attended professional conventions with colleagues throughout the country. He has had an opportunity to learn what contemporary community standards are from his conversations with colleagues and from his exposure to and experience with the public as a result of his nationwide traveling. His background and work in psychiatry, his experiences in psychotherapy with couples having marital difficulties, and his knowledge gained from traveling and conferring with colleagues practicing throughout the country qualified him to testify as an expert witness as to all three of the issues. Although he testified that there was an element in the film that could appeal to a prurient interest in sex, it was his opinion that taken as a whole, as it must be, the film did not appeal to such an interest. He felt that the display of positions in sexual intercourse was educational. In Dr. Judd's opinion the American attitude towards sex tends in the direction of rigidity. Such rigidity in the approach to sex between husband and wife results in marital discord. The redeeming social value is the education that can be derived from a viewing of the film which should lead to a softening of the rigid view toward sex in marriage.
Bruce Bahrenburg, movie critic for the Newark News, a leading newspaper in the State, testified as to the second *499 issue. His qualifications as an expert are based upon his experience in his employment. He reviews films shown throughout the United States. He travels widely in the country and is familiar with the general type of moving picture being accepted by the public and consequently is familiar with the nationwide community standard as to the portrayal of sexual acts in motion pictures. The Court held that he was qualified as an expert. Mr. Bahrenburg testified that community standards do not prohibit an explicit portrayal of sexual acts where such portrayal is appropriate. In his opinion "Man and Wife" does not affront contemporary community standards relating to the description or representation of sexual matters and is not patently offensive.
Richard H. Siss, a clinical psychologist who is chairman of the Sex Education Committee of the Perth Amboy Public School System and is in private practice as a marriage counsellor, was called as an expert witness on the third issue. In his practice as a marriage counsellor he had found that 95% of the persons coming to him as a result of marital discord lacked a knowledge of sexual intercourse. Where couples are limited to a specific position for sexual intercourse, they tend to be inhibited in sexual adjustment which in turn leads to marital discord. Such limitation is usually because of lack of knowledge. If a person is well adjusted sexually within marriage, such person will normally make a good adjustment to the community. Knowledge of sex does not come naturally. It is acquired through education. For many people learning is best derived visually. Based upon these facts he testified that the film had redeeming social value. His qualifications as an expert, based upon his professional training and his vocation, were accepted by the Court on the third issue.
Reverend Newton W. Greiner, Minister of the First United Methodist Church, has been involved in premarital, marital and juvenile counselling on a day to day basis. He testified that the film had redeeming social value as an educational device in an area greatly in need of such. His experience *500 has taught him that marital harmony is more likely where the sex act in marriage is engaged in for enjoyment as well as for procreation. His studies and experience have led him to the conclusion that for a marriage to be successful there should be total involvement for each partner. The major problems of people who have come to him for counselling have arisen from a lack of knowledge and understanding of sex. The people he has counselled have had inadequate knowledge of the techniques of intercourse and this lack of knowledge has caused maladjustments. He has recommended that couples whom he was counselling see "Man and Wife." The very nature of his work qualified him as an expert witness on the third issue.
The Court is aware that there will be those who hold the belief that the showing of sexual intercourse even between a man and wife is scandalous and obscene. The likes or dislikes, no matter how strongly held, of individual members of society cannot be a determining factor as to whether the film should be declared obscene and suppressed. Such persons need not pay the price of admission to see the film. There was no evidence of offensive advertising that might be deleterious to those under 18 years of age (in fact, the film was restricted to persons over 21 years of age) or that might be an "assault on individual privacy." Redrup v. New York, 386 U.S. 767, 769, 87 S.Ct. 1414, 1415, 18 L.Ed.2d 515, 517 (1967). There was no evidence that the film was a "commercial exploitation of erotica solely for the sake of their prurient appeal" condemned in Ginsburg v. United States, 383 U.S. 463, 466, 86 S.Ct. 942, 945, 16 L.Ed.2d 31, 35 (1966).
The fact that the film was commercially shown is not relevant under the circumstances of this case. "It is of course no matter that the dissemination takes place under commercial auspices." Smith v. California, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205, 209 (1959).
In Jacobellis v. Ohio, 378 U.S. 184, at 191, 84 S.Ct. 1676, at 1680, 12 L.Ed.2d 793, at 800 (1964), the Court stated:
*501 * * * It follows that material dealing with sex in a manner that advocates ideas, Kingsley Int'l. Pictures Corp. v. Regents, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512, or that has literary or scientific or artistic value or any other form of social importance, may not be branded as obscenity and denied the constitutional protection. Nor may the constitutional status of the material be made to turn on a `weighing' of its social importance against its prurient appeal, for a work cannot be proscribed unless it is `utterly' without social importance. (emphasis added)
Judge Mintz stated in Lordi v. UA New Jersey Theatres, Inc., 108 N.J. Super. 19 (Ch. Div. 1970):
All ideas having even the slightest redeeming social importance  unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion  have the protection of the First Amendment unless excludable because they encroach upon the limited area of more important interest. [at 24]
The Court finds that the defendants have established that the film "Man and Wife" is not proscribed by any one of the three criteria that must be found before a work can be held to be obscene. Even if the Court may be wrong as to the dominant theme of the film and as to whether it is patently offensive, it is clear that the film has redeeming social value. Theoretically, at least, the marriage relationship is at the foundation of our form of civilization. One hears condemnation of the mounting divorce rate. The evidence adduced in this case and the works of experts writing about relationships between husband and wife (e.g., James Leslie McCary, Human Sexuality, D. Van Nostrand Company, Inc. 1967) show that a basic cause of discord in marriage that leads to alienation and finally divorce is lack of understanding and knowledge of sex within the marriage. A work that educates about the most basic sexual relationship between husband and wife is not obscene and its dissemination is protected by the First Amendment. "* * * [T]he Constitution protects the right to receive information and ideas." Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542, 549 (1969) There will be a judgment declaring that "Man and Wife" is not obscene.