147 N.J. Super. 36 (1977)
370 A.2d 525
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS NAPRIAVNIK, IRVING WOLBERT, EDWARD HENDRICKS, AND ED-JON CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1977.
Decided February 3, 1977.
*37 Before Judges BISCHOFF, MORGAN and RIZZI.
Mr. Robert E. Levy argued the cause for appellants.
Mr. Benjamin D. Leibowitz, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendants appeal their convictions, following a jury verdict, of three counts of possessing obscene materials with intent to distribute and one count of selling an obscene motion picture film. N.J.S.A. 2A:115-2. The jury *38 acquitted all three defendants of two counts of distribution or selling specified obscene motion pictures, magazines and newspapers.
The State's evidence at trial disclosed that Investigator Michael Sasso of the Morris County Prosecutor's office went to the "Adult Book Store" on Route 46 in Roxbury Township, New Jersey, to make some purchases at the direction of Chief Detective Sweedy. Upon arriving he was waited on by defendant Thomas Napriavnik who sold him two films, "California Erotics," "Wet Dream No. 10" and "Party Girl, Statutory Rape," and a magazine, "Girlfriends Annual." The purchase of these materials was made the subject of the first two counts of the indictment, count 1 charging Napriavnik and the other individual defendants, principals of defendant corporate proprietor, with possessing them with intent to distribute, and count 2 with distributing or selling them to Sasso.
Sasso returned to the store on the next day, November 15, 1974, and purchased from Napriavnik two magazines, "Make All Deliveries To The Rear" and "Focus on Housewives." These purchases were made the subject of counts 3 (possession) and 4 (distribution or sale) of the indictment. On November 18, 1974 he purchased from Napriavnik another film, "Coffee, Tea or Me," the subject of count 6, charging sale of the film. Later that day Sasso participated in the execution of a search warrant at the store from which 1100 magazines, 123 films and 90 "newspaper type papers" were seized. Among these were one film, "Soul Food," one magazine, "Making it Big," and three newspapers, "Pleasure," "Pussy Cat" and "Screw," possession of which with intent to distribute was charged in count 5. Sasso described all items referred to in the indictment, except one ("Party Girl, Statutory Rape," counts 1 and 2), as dealing with homosexual themes.
Further evidence disclosed that defendant Hendricks was vice-president of defendant Ed-Jon Corporation and that the *39 corporation had leased the premises through defendant Irving Wolbert, whose name appeared on the lease
Napriavnik was the only defense witness. He denied that Sasso ever visited the store prior to his arrest and denied all sales to him. He also denied specific knowledge of what was depicted on the films referred to in the indictment, although he admitted general knowledge as to their contents. Similarly, with respect to the magazines he stated that since they were wrapped in cellophane he lacked specific knowledge as to their contents.
The jury found all defendants guilty with respect to counts 1, 3 and 5 charging possession of the described materials with intent to distribute them and guilty with respect to count 6 charging sale of one film to Sasso. Defendants were acquitted of the counts charging distribution or sale of the materials described therein. By special verdict the jury found the following materials to be obscene: "Party Girl, Statutory Rape" (count 1), "Focus on Housewives" (count 3), and "Coffee, Tea or Me," "Soul Food," "Pleasure" and "Pussy Cat" (count 5).
Defendants' post-trial motions for acquittal or a new trial were denied. The following grounds, taken from defendants' brief, are asserted by defendants as the basis for their contention that the convictions should be vacated and the indictment dismissed:
I. Distribution of powers.
II. N.J.S.A. 2A:115-1.1 (1972) cannot be construed to include the constitutional standards set forth in the most recent decisions of the United States Supreme Court.
III. N.J.S.A. 2A:115-2 and N.J.S.A. 2A:115-6 are in pari materia, must be read and construed together, and require dismissal of the indictment against defendant-appellant Napriavnik.
IV. Since the indictment fails to charge that the defendants had knowledge that the publications herein were obscene, it is fatally defective and should be dismissed as a matter of law.
V. State failed to meet its burden of proof as to contemporary community standards and expert testimony.

*40 VI. Court erroneously submitted the issues of obscenity to the jury on a res ipsa loquitur approach.
VII. Court failed to accurately charge the constituent elements of prurient appeal.
VIII. Court erred in failing to charge, with respect to the appeal to prurient interest of deviants.
IX. Court erred in charging the defendants, Wolbert, Hendricks and Ed-Jon Corporation, could be guilty of aiding and abetting.
X. Massive search and seizure without a prior adversary hearing requires the setting aside of the verdict.
XI. Failure to instruct the Grand Jury of the component elements of N.J.S.A. 2A:115-1.1 et seq., as determined by the New Jersey Supreme Court, deprives these defendants of their right to due process of law.
XII. Jury verdict was against the weight of the evidence.
Points I and II both center about defendants' argument that the New Jersey Supreme Court overstepped the proper bounds of its authority and jurisdiction when it decided State v. DeSantis, 65 N.J. 462 (1974); defendants seem to be asking this court to overrule that case. Clearly, these arguments, whatever their merit, are addressed to the wrong court and we decline comment on defendants' lengthy discourse on the subject. Silagy v. State, 105 N.J. Super. 507, 510 (App. Div. 1969), certif. den. 54 N.J. 506 (1969).
Point IV concerns itself with a discerned deficiency in the indictment, a failure to allege defendants' knowledge of the obscene character of the materials they were charged with possessing and selling. The contention is without merit. Each count charges that defendants either "knowingly" possessed or "knowingly" sold or distributed obscene materials; scienter was sufficiently alleged. N.J.S.A. 2A:115-2.2(e); State v. Hudson Cty. News Co., 41 N.J. 247, 257-58 (1963); Hamling v. United States, 418 U.S. 87, 119-24, 94 S.Ct. 2887, 2908-2911, 41 L.Ed.2d 590, 622-23 (1974).
Points V and VI focus upon defendants' contention that the State's case was insufficient for jury consideration because of the absence of expert proof that the materials in question violated contemporary community standards and appealed to the prurient interest of the average person. Defendants *41 contend that without such proof, the case was submitted to the jury on a theory akin to the tort concept of res ipsa loquitur, casting upon defendants the burden of exculpating themselves in violation of basic tenets of criminal procedure. Defendants do not, of course, contend that the charge included instructions on res ipsa loquitur (it didn't); they merely contend that without expert proof, submission of an obscenity case to a jury has the same effect.
Keuper v. Wilson, 111 N.J. Super. 489 (Ch. Div. 1970), cited by defendants, required expert proof describing contemporary community standards and evaluating material as being obscene or not obscene.[1]Keuper was, however, decided at a time when New Jersey was applying national standards against which to measure the obscenity of given materials, and were that standard to be followed, there would be considerable merit to the contention that expert proof is necessary; knowledge of national standards for evaluating allegedly obscene matter is normally confined to the expert and without the scope of the normal factfinder's competence.
Notwithstanding State v. Hudson Cty. News Co., supra, which held that obscenity is to be evaluated in accordance with national standards, we are of the view that the logic of State v. DeSantis, supra, compels us to conclude that local standards are to be applied and that, accordingly, expert proof concerning those standards, although admissible, is no longer an essential attribute of a State's case on obscenity.
The recent history of the law of obscenity in New Jersey is characterized by an ongoing attempt to divine the outer perimeter of First Amendment protection afforded by the shifting views of the United States Supreme Court in connection *42 with obscenity prosecutions. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). As early as 1963, the legislative intent to forbid obscene matter to the fullest extent permissible under the First Amendment was discerned. State v. Hudson Cty. News Co., supra, 41 N.J. at 265. The accuracy of that assessment of intent was confirmed when in 1971 the Legislature passed L. 1971, c. 449 (N.J.S.A. 2A:115-1.1) which, in effect, abandoned the three-pronged test set forth in L. 1966, c. 199 and reverted to the definition of obscenity in L. 1962, c. 166. The statement attached to the bill clearly expressed the intent discerned by our Supreme Court in State v. Hudson Cty. News Co., supra. See State v. DeSantis, supra, 65 N.J. at 466; see also, N.J.S.A. 2A:115-1.1a.
Hence, the extent of protection afforded allegedly obscene material under New Jersey law, which depends to a large degree upon the standard to be applied in determining whether such matter falls within or without First Amendment protection, was determined by federal constitutional law as declared by the United States Supreme Court. It was because the court in State v. Hudson Cty. News Co., supra, conceived that a national standard would be required by federal constitutional law that such standard was adopted as the law of New Jersey.
Accordingly, the "contemporary community standard" to be applied in enforcement of the statute must comport with the limitations imposed on the State by and the freedoms guaranteed the individual by the First Amendment. We are of the opinion that such a standard must necessarily be uniform throughout the nation. [41 N.J. at 265]
The court proved to be correct, at least in the near future. The following year Jacobellis v. Ohio, supra, held that national *43 standards were to be applied in determining whether specified matter was obscene. That view persisted until 1973 when, in Miller v. California, supra, it was decided that local, rather than national, standards could be applied.
The question here presented is whether we should adhere to the requirement that national standards apply according to State v. Hudson Cty. News Co., supra, or whether, because of the recent shift in federal law, that holding no longer has authoritative or binding effect. We conclude that the holding of the Hudson County News case represented a response to the court's perception of what standard of obscenity federal law required or was likely to require. Since the requirements have changed, and there is no longer any room for doubt but that local standards can be used as the measure of the obscenity of given materials, we conclude that New Jersey law should reflect that change since the Legislature has expressed the intention of proscribing obscene matter to the fullest permissible extent. That intent will be fully implemented by permitting prosecutions with respect to the matter deemed obscene by contemporary New Jersey standards. This State has no conceivable interest in proceeding against material not deemed obscene here but offensive in other remote geographical areas of this country. Similarly, the Legislature could not have intended that material obscene by contemporary New Jersey standards should receive protection because elsewhere found inoffensive. Full sway will be given to the discerned legislative intent to proscribe obscenity to the fullest extent consistent with First and Fourteenth Amendment requirements if local community standards, that is, standards obtaining in the State as a whole, are to be the measure of what shall be held obscene. The trial judge so charged and we, therefore conclude no error has been shown with respect thereto.[2]
*44 As previously suggested, application of local community standards dispenses with the necessity for expert proof. The leading case concerning the necessity for expert testimony in obscenity prosecutions is Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). In Kaplan, a state criminal prosecution under the state's obscenity laws, the court ruled that, although admissible, expert testimony on behalf of the prosecution is not constitutionally required once the allegedly obscene materials themselves are placed in evidence. The explanation for this ruling was supplied in the more recent case of Hamling v. United States, supra, wherein it was stated:
A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a "reasonable" person in other areas of the law.

* * * * * * * *
The result of the Miller cases, therefore, as a matter of constitutional law and federal statutory construction, is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion "the average person, applying contemporary community standards" would reach in a given case. [418 U.S. at 104-05, 94 S.Ct. at 2901, 41 L.Ed.2d at 613]
See also, Paris Adult Theatre I v. Slaton, 413 U.S. 49, 56, 93 S.Ct. 2628, 37 L.Ed.2d 446, 456 (1973). In light of the Miller cases and the intent of the Legislature as defined in DeSantis, the ruling in Hudson County News, supra, requiring expert proof describing the standards to be applied and providing opinion as to whether given matter offends those standards is no longer authoritative. Expert proof is, therefore, no longer necessary and the State's case in the present matter was sufficient despite its absence.
N.J.S.A. 2A:115-6 shields, from prosecution under the State's obscenity laws, motion picture projectionists having no financial interest in the motion picture theatre in which they work and lacking decision-making authority or responsibility *45 with respect to the selection of the motion picture to be exhibited. Defendant Napriavnik contends, in his third point of argument, that N.J.S.A. 2A:115-6 should be construed by us to include clerks who sell books, magazines and film. He argues that without that construction he would be denied equal protection of the laws since there is no rational basis upon which to justify treating clerks and motion picture projectionists differently.
We agree with defendant as to the absence of any real basis for distinction between projectionists and book clerks who have no voice in the selection of materials to be sold or viewed and who have no financial stake in the enterprise for which they work beyond that of drawing a salary for the performance of their required duties. We regard as being without merit the State's contention that the technical expertise of projectionists and the need to insure their availability by shielding them against prosecution for exhibiting obscene films provides a sufficient basis to afford them the protection denied book clerks; the technical expertise required is of such a minimal nature, and so easily learned, that the proffered distinction is more fanciful than real. Notwithstanding, we are in no position to offer defendant the relief he seeks. Declaring N.J.S.A. 2A:115-6 unconstitutional as depriving book clerks and similarly situated individuals of equal protection of the laws will not aid defendant; he would still remain liable to prosecution. Moreover, there is no warrant to extend N.J.S.A. 2A:115-6 beyond its clear, express and unequivocal terms by affording its immunity to those the Legislature did not intend to protect. No compelling public need to "judicially salvage" N.J.S.A. 2A:115-6 warrants judicially rewriting this enactment. Compare State v. DeSantis, supra. Hence, we conclude that defendant Napriavnik can derive no benefit from the existence of N.J.S.A. 2A:115-6 (or even from a declaration of its unconstitutionality), and his contentions in that regard lack merit.
*46 Defendants contend in their eighth point of argument that the judge court erred in failing to charge "with respect to the fact that the material itself would have to be designed for and primarily disseminated to a clearly defined deviant sexual group rather than to the general public," apparently referring to a brief comment in the evidence that the materials seem to be directed primarily to the homosexual market. Although not clear, defendants' argument seems to be that since the materials were homosexually oriented, their obscene character, if any, must be measured by their appeal to that group. See Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); United States v. Klaw, 350 F.2d 155 (2 Cir.1965). As an incident to this argument defendants also stress the absence of expert testimony concerning what this deviant group would view as obscene and whether the materials were obscene by this expertly established standard.
Contrary to defendants' assertions, however, no request to charge was tendered and appellate intervention, therefore, would be warranted only if the omission could be viewed as plain error "of such a nature as to [be] clearly capable of producing an unjust result." R. 2:10-2; State v. Brown, 131 N.J. Super. 228, 232 (App. Div.), aff'd o.b. 66 N.J. 146 (1974). No such error has been shown. That materials may have some appeal to a sexually deviant group does not necessarily preclude their appeal to the prurient interest of the average person applying contemporary community standards. Indeed, the jury in this case concluded that some of the materials before them had such appeal. The charge with respect to the appeal to a deviant group would only have increased the scope of defendants' exposure to criminal liability and its omission cannot, therefore, be regarded as plain error.
The remaining claims of error lack merit.
Affirmed.
NOTES
[1] G.P. Putnam's Sons v. Calissi, 86 N.J. Super. 82, 91 (Ch. Div. 1964), rev'd on other grounds, 50 N.J. 397 (1967), also cited by defendants for that proposition, held only that expert proof was admissible and appropriate; it did not, as defendants seem to suggest, hold that it was essential.
[2] We are not here confronted with the question of whether application of the standards of communities within this State as the measure of obscenity passes constitutional muster and we decline comment thereon.