**BOOKS, INC., Defendant, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 6552.**

United States Court of Appeals
First Circuit.

April 12, 1966.

Leonard A. Kamaras, Providence, R. I., with whom John H. DiStefano, Providence, R. I., was on the brief for appellant.

Frederick W. Faerber, Jr., Asst. U. S. Atty., with whom Raymond J. Pettine, U. S. Atty., was on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE, Circuit Judge, and WYZANSKI, District Judge.

WYZANSKI, District Judge.

Books, Inc., a distributor of paperback books, appeals from a $1500 fine imposed following a jury verdict that, in violation of 18 U.S.C. § 1465 and § 2(b),[1] it had knowingly caused to be transported in interstate commerce for the purpose of sale or distribution *Lust Job,* an obscene book. The principal issue presented on appeal is whether the District Judge should have ruled as a matter of law that the book was not obscene in the statutory or constitutional sense. Other issues are raised as to rulings during the taking of testimony and as to denials of requests for instructions.

Ephraim, a Massachusetts retail bookseller, entered into an automatic plan with defendant Books, Inc., a Rhode Island distributor, under which the latter, on its own initiative, chose books and caused them to be transported in interstate commerce for Ephraim to sell. Defendant selected, and caused the interstate transportation of, at least two copies of *Lust Job,* a paperback novel.

Following indictment under 18 U.S.C. § 1465, defendant moved for a bill of particulars. In response, the United States Attorney stated "it is the Government's contention that obscene material permeates the dominant theme of the material of said book [*Lust Job*], which theme extends from page 5 to page 188 inclusive." Those pages set forth, in the form of a novel, a tale exclusively devoted to the sexual adventures of its principal characters. Adulteries, seductions, and orgies are the only events of importance. The contacts described include not only sexual intercourse, but sodomy and other perversions. There is not any serious effort to portray the reality of cultural or social conditions of even the most neurotic or sordid portion of the population. Description of the locale is mini-

1. 18 U.S.C. § 1465 "Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral char- acter, shall be fined not more than $5,000 or imprisoned not more than five years or both. * * *"

18 U.S.C. § 2(b) "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." As amended Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717.

mal. The style is flaccid, repetitive, and unreflective of the author's individuality.

On the front cover of the book is an unclothed woman, her back toward the reader. She is seated on the floor, her back and buttocks showing, her head tilted backwards and her arms clasping below the knees the trousers of a clothed man. The title *Lust Job* is printed so that it crosses the woman's back. Above the woman's head and across the man's trousers are the words "He climbed to the top on a ladder of sin." On the rear cover appears the following description of the book:

> "SELFISH PASSIONS * * *
> drove Steve Rapallo, a handsome, eager young executive as he clawed his way up the lust ladder to success. Success in money and bed, the only two things that seemed to matter. And to hell with the way he got them. Take Carol —which he did—the wanton wife of his boss, whose only desire was to get between the sheets and stay there. And Rapallo was just the chamber stud she needed. It was a ball, and it was *Miami Beach* and it was the annual convention. A time for fun. A time for sin. A time for shame and lust and everything that added up to wild bedroom orgies where nobody cared what anybody did as long as they did it and never stopped!
>
> * * * GUTTER LOVE!"

Defendant offered as literary experts two assistant professors of English literature at Rhode Island College. Mr. Sternberg testified that *Lust Job* was "poor literature" but the dominant theme was "the advocating of moral responsibility and the leading of a moral life." Mr. Anghinetti stated that he did not believe the book had literary merit, but its "redeeming quality" was "its element of condemnation of sexual behavior."

The other evidence does not need to be recited before turning to the principal question raised on this appeal, that is whether, responding to defendant's motion at the conclusion of the Government's case-in-chief, or its motion at the end of all the testimony, the District Judge should have entered a judgment of acquittal on the ground that *Lust Job* was not, as a matter of law, an obscene book under 18 U.S.C. § 1465 or under the First Amendment to the United States Constitution.

■■ Guided by the controlling opinions of the justices in the majority in the three cases decided March 21, 1966 in the Supreme Court of the United States, Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 969, 16 L.Ed.2d 31; Mishkin v. State of New York, 383 U.S. 502, 86 S. Ct. 958, 16 L.Ed.2d 56, and A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (the Fanny Hill case), as well as earlier cases such as Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639, and Jacobellis v. State of Ohio, 378 U.S. 184, 84 S. Ct. 1676, 12 L.Ed.2d 793, this Court is bound to conclude that a jury could find *Lust Job* obscene within the meaning of 18 U.S.C. § 1465, and that such application of the statute is not repugnant to the First Amendment. Under the most recent Supreme Court decisions, there was adequate evidence in the text of the novel, without any reference to the covers, to warrant a factual determination that the dominant theme of the book taken as a whole appeals to a prurient interest in sex, that the book is patently offensive because it affronts contemporary community standards relating to the description of sexual matters, and that the material is utterly without redeeming social value.

■■ Moreover, we recognize that in close cases, where it is doubtful if a text is obscene, a majority of the Supreme Court of the United States deems it appropriate to look at the circumstances under which the text was commercially offered. Ginzburg v. United States, Mishkin v. State of New York, A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massa-

chusetts. Where publications have been created or exploited entirely on the basis of their appeal to prurient interests, a conclusion is permissible that the merchandise transported, sold, or otherwise dealt in, is obscene in the statutory sense and is not constitutionally protected matter. Ginzburg v. United States, 86 S.Ct. p. 974. Under the foregoing rule, it would be appropriate either for the District Court or this Court to take into account the front and back covers of *Lust Job* and from them to reach a conclusion that there were pandering and an exploitation of interests in titillation, and that, therefore, the text of *Lust Job* itself is obscene.

Nothing is to be gained by a detailed comparison of *Lust Job* and the publications before the Supreme Court in the Ginzburg or Mishkin cases. Quite plainly *Lust Job* could be found to equal or exceed some of those publications in prurient appeal and patent offensiveness. Likewise, it could be found to be without redeeming social value.

■ Nor can defendant successfully bring itself within the scope of the decision in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts involving Fanny Hill. Unlike that book, *Lust Job,* in the opinion of defendant's own experts, has no modicum of literary value. To be sure, defendant's literary experts asserted that the book had a purgative moral value. But for two reasons this testimony had no probative force: first, it was not within the alleged expert qualifications of the witnesses; and second, an otherwise obscene book cannot be held to have from the constitutional viewpoint a redeeming social value because the erotic passages and the description of deviant sexual practices instead of stimulating a prurient response from an average reader would disgust and sicken him and act as a moral catharsis. Mishkin v. State of New York, 86 S.Ct. p. 963. Moreover, in the case at bar there is evidence, which was absent in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, "that the book was commercially exploited for the sake of prurient appeal, to the exclusion of all other values." See A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 86 S.Ct. p. 990.

Defendant raises a number of points with respect to the trial, all of which we have examined, but of which it seems to us only two require comment in this opinion.

■ Defendant, mindful of the obscenity test enunciated in Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, that is, "whether to the average person, applying contemporary standards, the dominant theme of the material taken as a whole appeals to prurient interest", requested an instruction that "The average person, as construed and applied, must be the adult within the community, being the nation at large and anyone less than an adult must be absolutely excluded from your consideration." The District Judge, instead, gave a charge, of which the pertinent part is quoted in the footnote[2] placing emphasis on the "effect of the book * * * not upon any particular class, but upon all those it was likely to reach; in other words, its impact upon

---

**2.** "The first test to be applied by you in determining whether said book, 'Lust Job,' is obscene is whether the dominant or most obvious theme or purpose of said book, when viewed as a whole and not part by part, is an appeal to the prurient interest of the average person of our national community. It is not whether it would arouse lustful thoughts in those comprising a particular segment of our community, such as the young, the immature, or highly prudish, or, on the other hand, would leave another segment, such as the scientific or highly educated, or the so-called wor[l]dly-wise and sophisticated, indifferent and unmoved. The test is the effect of the book considered as a whole not upon any particular class, but upon all those it was likely to reach; in other words, its impact upon the average person in our national community in 1962."

the average person in our national community."

In appraising this charge, we bear in mind that it was delivered orally, and that we are concerned not with academic perfection but with the way the language would be understood by a jury. Laymen would regard, as indeed we do, the instruction as directing attention to the effect of the book upon a typical mature adult reader in the audience which defendant's method of distribution of *Lust Job* sought to reach. Focus on such a typical reader whom defendant sought "to catch" comports with the decision with respect to The Housewife's Handbook in Ginzburg v. United States, see particularly 86 S.Ct. p. 973.

It is plain that Butler v. State of Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412, has no application to the case at bar. The charge in the instant case does not permit the jury to use as the test of pruriency, or of community standards, or of other aspects of obscenity the effect of the book upon children as a class. Nor does the charge emphasize, as did the trial judge in the findings reviewed in Ginzburg v. United States, 86 S.Ct. p. 970, f. 3, the effect of the book upon "children of all ages, psychotics, feeble-minded and other susceptible elements." On the contrary, here the jury was directed to consider as the measuring rod the total market at which defendant aimed, and to consider specifically the average mature person in that market, neither the very immature nor the very sophisticated. Such a measuring rod is appropriate.

 The other point deserving of our comment is the refusal of the trial judge to permit defendant to introduce in evidence a large number of publications currently available in Rhode Island so that from them the jury could better form its opinion of community standards. It is, of course, true that what is sold in the market reflects to some extent community standards. But it is not true that every item sold is necessarily not obscene. Hence, not every book sold in the market is admissible to test the obscenity of *Lust*

*Job.* Nor is a judge required to admit as a touchstone for the jury even those books which are admittedly not obscene. The admission of a number of different publications alleged to be comparable to the publication in issue might make the trial unmanageably complex and lengthy. The trial judge must be allowed wide discretion as to whether to permit the introduction of such allegedly comparable publications, and as to whether to allow the witnesses to be examined in detail on publications other than the one directly at issue. Here the trial judge did not abuse his discretion.

Affirmed.