Commonwealth *v.* LaLonde et al., Appellants.

Argued September 28, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Marjorie H. Matson,* for appellants.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 21, 1972:

Louis LaLonde, Charles Mitchlen and William Schrin were convicted in a nonjury trial in Allegheny

County of illegal possession and sale of obscene literature in violation of Section 524 of the Act of June 24, 1939, P. L. 874, as amended, 18 P.S. §4524.[1] Post-trial motions were denied and sentence was imposed. On appeal the Superior Court affirmed the judgments without opinion. Judges HOFFMAN and SPAULDING noted a dissent. See 218 Pa. Superior Court 805, 275 A. 2d 394 (1971). We granted allocatur.

The events recounted at trial began on October 31, 1967, with the purchase of a paperback book entitled "Queenie" by Detective Regis Holleran of the Pittsburgh Police Department from Louis LaLonde, a salesman-employee of the Mello Cigar Store, a Pittsburgh establishment owned by appellant Schrin.[2] On November 9th, Holleran returned to the store and purchased a second book entitled "The Hypocrite." This transaction was made with appellant Mitchlen, who sold the book without comment.

The detective later consulted with the police legal advisor and a representative of the district attorney's office, both of whom read the books and advised the prosecution which was subsequently initiated and which culminated in the instant convictions.

At trial both books were introduced as exhibits and the text was incorporated into the record. In addition

----

[1] "Whoever sells, . . . or offers to sell, . . . or has in his possession with intent to sell . . . any obscene literature, book, . . . or any written or printed matter of an obscene nature, . . . is guilty of a felony . . . .

" 'Obscene' as used in this section, means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole an appeal to prurient interest."

[2] Detective Holleran testified that as he was perusing several books on a rack marked "Adults Only" he was approached by the clerk, LaLonde, who suggested that if Holleran desired a real dirty book that "Queenie" would be appropriate.

there was oral testimony from the police officer who had purchased these items. He described the premises where the books were offered for sale, the manner in which they were displayed and the circumstances surrounding the purchase. No other evidence was proffered by the Commonwealth on whether the books were obscene vel non in the constitutional sense.

Appellants attempted to rescue the books through the expert testimony of Dr. Maurice Serul, a psychiatrist at the University of Pittsburgh specializing in human sexuality. The doctor testified that in his opinion neither book was obscene and that both had redeeming social value from a clinical point of view. This for the reason that pornography "serves as a method of draining off sexual tensions and sexual impulses" which might otherwise be expressed in more harmful ways, as for example by the commission of sex crimes.[3]

It is appellants' contention that reversal of the instant convictions is required for two reasons: first, because the Commonwealth failed to prove that these books were obscene in the constitutional sense, and second, because the Pennsylvania Obscenity Statute is unconstitutional on its face and as applied in the circumstances of this case.

We reverse for the reasons stated hereinafter which are limited solely to the issue of failure of proof.

---

[3] It is interesting to note that somewhat analogous claims were made concerning the value of pornography in similar expert testimony offered by the defendant in *United States v. New Orleans Book Mart, Inc.*, 328 F. Supp. 136 (1971). Despite the concession that under certain circumstances such material might well have therapeutic or beneficial effects, the trial judge felt the value of such testimony was dubious. This conclusion was predicated on the fact that there [as is the case here] sale was not limited to therapists or educators but was offered to any member of the public at large having the purchase price of the books.

In a most able opinion the lower court delineated the confusing state of obscenity law which seems to us akin "to a riddle wrapped in a mystery inside an enigma." Writing for the court en banc, Judge Mc-Lean said: "There was no expert testimony presented by the Commonwealth, and the only real evidence of obscenity was the books themselves. However, once the trial judge concluded that it is still legally possible for obscenity to occur, he concluded that these books must necessarily be obscene, for he could not imagine what else might be done to make either of the books 'more obscene.' In other words, if there is such a thing as an obscene narration, this has to be it, and if this is not it, then there is none."

However, guided by our decision in *Commonwealth v. Dell Publications, Inc.*, 427 Pa. 189, 233 A. 2d 840 (1967),[4] a comparison of the challenged books to other

---

[4] In that case our Court was called upon to apply the *Roth-Memoirs* test to the book "Candy" which, like the instant publications, was asserted to be obscene.

*Roth v. United States*, 354 U.S. 476, 489, 77 S. Ct. 1304, 1311 (1957), defined obscenity in the following terms: "[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to a prurient interest [in sex]." "Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Memoirs v. Massachusetts*, 383 U.S. 413, 418, 86 S. Ct. 975, 977 (1966).

In the *Dell* case, it was held, and properly so, that material must meet *each* of the above mentioned tests before it can be declared legally obscene.

Elaborating on the second prong of the test ("material . . . patently offensive because it affronts contemporary community standards"), Mr. Justice Roberts wrote for the Court: "There are two

books which have been held entitled to the protection of the First Amendment by the Supreme Court of the United States leads to the inescapable conclusion that *at a minimum* we are presently precluded from sustaining these convictions by following that salutary line of cases which holds that when confronted with hard core pornography, no proof other than the viewing is required to determine the question of obscenity vel non. See *Morris v. United States,* 259 A. 2d 337 (D.C. App. 1969) ; *Hudson v. United States,* 234 A. 2d 903 (D.C. App. 1967) ; *Donnenberg v. State,* 1 Md. App. 591, 232 A. 2d 264 (1967) ; *United States v. Gower,* 316 F. Supp. 1390 (1970) ; *United States v. Wild,* 422 F. 2d 34 (2d Cir. 1969).[5]

In recent years the United States Supreme Court has on at least twenty-nine occasions reversed obscenity convictions and determinations involving various kinds of expression (books, photo-magazines, films, etc.) on the authority of its cryptic per curiam opinion in

yardsticks by which contemporary community standards may be judged. *One is to compare the challenged book to other books which have either been held entitled to the protection of the First Amendment* or, in the absence of litigation, which meet contemporary standards and are substantially similar to the challenged book. The other is to consider the reception the book received from the community when it was released." 427 Pa. at 202, 203 [emphasis supplied].

[5] "[W]here there is a ruling of obscenity per se, the defense would then be entitled to offer evidence of the national community standard to prove the material or performance is *not* obscene. Such proof, if established, would be a good defense." *Morris v. United States,* supra, at 341. Accord, *United States v. Manarite,* 448 F. 2d 583 (1971).

In his opinion below, the trial judge candidly stated that there has never been a book held to be legally obscene by the United States Supreme Court. Our research did not uncover a single instance in which a book, other than those containing photographic or other illustrations of explicit sexual activity, was declared to be hard core pornography by lower federal or state courts.

*Redrup v. New York,* 386 U.S. 767, 87 S. Ct. 1414 (1967).[6] Several of these cases involved books of the same genre as "Queenie" and "The Hypocrite", namely, distorted, impoverished masturbatory concentrations on the representation of sexual activity. The lower courts had little difficulty in determining the books to be obscene and their descriptions of what was being proscribed are disturbingly similar to any description we might apply to the instant books.

Thus the material held protected in *Books, Inc. v. United States,* 388 U.S. 449, 87 S. Ct. 2098 (1967), had

---

[6] *Hartstein v. Missouri,* 404 U.S. 988, 92 S. Ct. 531 (1971); *Wiener v. California,* 404 U.S. 988, 92 S. Ct. 534 (1971); *Burgin v. South Carolina,* 404 U.S. 806, 92 S. Ct. 46 (1971); *Bloss v. Michigan,* 402 U.S. 938, 91 S. Ct. 1615 (1971); *Childs v. Oregon,* 403 U.S. 948, 91 S. Ct. 1248 (1971); *Hoyt v. Minnesota,* 399 U.S. 524, 90 S. Ct. 2241 (1970); *Walker v. Ohio,* 398 U.S. 434 90 S. Ct. 1884 (1970); *Bloss v. Dykema,* 398 U.S. 278, 90 S. Ct. 1727 (1970); *Cain v. Kentucky,* 397 U.S. 319, 90 S. Ct. 1110 (1970); *Carlos v. New York,* 396 U.S. 119, 90 S. Ct. 395 (1969); *Henry v. Louisiana,* 392 U.S. 655, 88 S. Ct. 2274 (1968); *Felton v. City of Pensacola,* 390 U.S. 340, 88 S. Ct. 1098 (1968); *Robert-Arthur Management Corp. v. Tennessee,* 389 U.S. 578, 88 S. Ct. 691 (1968); *I. M. Amusement Corp. v. Ohio,* 389 U.S. 573, 88 S. Ct. 690 (1968); *Chance v. California,* 389 U.S. 89, 88 S. Ct. 253 (1967); *Central Magazine Sales, Ltd. v. United States,* 389 U.S. 50, 88 S. Ct. 235 (1967); *Conner v. City of Hammond,* 389 U.S. 48, 88 S. Ct. 234 (1967); *Potomac News Co. v. United States,* 389 U.S. 47, 88 S. Ct. 233 (1967); *Schackman v. California,* 388 U.S. 454, 87 S. Ct. 2107 (1967); *Mazes v. Ohio,* 388 U.S. 453, 87 S. Ct. 2105 (1967); *A Quantity of Copies of Books v. Kansas,* 388 U.S. 452, 87 S. Ct. 2104 (1967); *Books, Inc. v. United States,* 388 U.S. 449, 87 S. Ct. 2098 (1967); *Aday v. United States,* 388 U.S. 447, 87 S. Ct. 2095 (1967); *Avansino v. New York,* 388 U.S. 446, 87 S. Ct. 2093 (1967); *Sheperd v. New York,* 388 U.S. 444, 87 S. Ct. 2093 (1967); *Cobert v. New York,* 388 U.S. 443, 87 S. Ct. 2092 (1967); *Ratner v. California,* 388 U.S. 442, 87 S. Ct. 2092 (1967); *Friedman v. New York,* 388 U.S. 441, 87 S. Ct. 2091 (1967); *Kency v. New York,* 388 U.S. 440, 87 S. Ct. 2091 (1967).

previously been condemned by the eminent Federal Jurist, Charles E. WYZANSKI, JR., in 358 F. 2d 935, 936 (1966) as follows: "[T]he pages set forth, in the form of a novel, a tale exclusively devoted to the sexual adventures of its principal characters. Adulteries, seductions, and orgies are the only events of importance. The contacts described include not only sexual intercourse, but sodomy and other perversions. There is not any serious effort to portray the reality of cultural or social conditions of even the most neurotic or sordid portion of the population." In *United States v. West Coast News Company*, 357 F. 2d 855, 858 (1966), the Sixth Circuit Court of Appeals characterized the book "Sex Life of a Cop" in the following manner: "Without palliating interruption, the story moves quickly from one sexual enterprise to another. So numerous are these events that even the practiced skill of the author runs out of fresh imagery and dully repeats his supply of leering adjectives." The court thereupon concluded that "we know hard core pornography when we see it." Id. at 858. The decision was reversed in *Aday v. United States*, 388 U.S. 447, 87 S. Ct. 2095 (1967). More recently in *Hoyt v. Minnesota*, 399 U.S. 524, 90 S. Ct. 2241 (1970), the Supreme Court overturned convictions for selling three purportedly obscene books[7] which had been earlier characterized by the Supreme Court of Minnesota as involving a "theme [which] is pointless save as it serves to relate the characters to repeated accounts of lewd and degrading episodes. They deal with filth for the sake of filth." 174 N.W. 2d 700, 702 (1970).

Believing as we do that the materials under scrutiny do not reach that plateau of degradation which would subject them to summary proscription under the

---

[7] "The Way of a Man with a Maid", "Adam and Eve", and "Business as Usual".

rationale of cases like *Morris v. United States,* supra, we now turn our attention to the independent evaluation which we are mandated to make on the issue of whether these books are obscene.[8]

The overriding difficulty which here confronts us is the absence of any evidence besides the books themselves. Hence, we find ourselves in the same legal cul de sac which recently confronted the Fifth Circuit Court of Appeals in *United States v. William Groner, d/b/a Lucky Distributors,* No. 71-1091 (C.A. 5, filed January 11, 1972).[9]

There, as here, the prosecuting authorities' only evidence was certain books alleged to be obscene. This evidentiary predicament caused the court [per THORNBERRY, J.] to complain that: "Knowing the legal test for obscenity and applying the same in the light of recent Supreme Court decisions, however, are two entirely different matters. We are completely incapable of applying the test in the instant case. Without some guidance, from experts or otherwise, we find ourselves unable to

---

[8] In *Jacobellis v. State of Ohio,* 378 U.S. 184, 84 S. Ct. 1676 (1964), the Supreme Court rejected the suggestion that the determination whether a book or other work of expression "is obscene can be treated as purely a factual judgment on which a jury's verdict is all but conclusive, or that in any event the decision can be left essentially to state and lower federal courts, with this Court exercising only a limited review such as that needed to determine whether the ruling below is supported by sufficient evidence." The Court stated, at 378 U.S. 190: "Hence we reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." The duty of this appellate tribunal is an equivalent one.

[9] Groner had been convicted of knowingly using a common carrier in interstate commerce to transport a quantity of obscene books from California to Texas, in violation of Title 18 U.S.C.A. §1462.

apply the Roth standard with anything more definite or objective than our own personal standards which should not and cannot serve as a basis for either denying or granting first amendment protection to this or any other literature."

The requirement of evidence on the elements of obscenity has been adopted by several state and federal courts over the past few years, no doubt because it lends a measure of objectivity to the exquisite vagueness of the *Roth-Memoirs* test. See, for example, *Woodruff v. State,* 11 Md. App. 202, 273 A. 2d 436 (1971); *In Re Seven Magazines,* 268 A. 2d 707 (S. Ct. R. I. 1970); *Keuper v. Wilson,* 111 N.J. Super. 489, 268 A. 2d 753 (1970); *In Re Giannini,* 69 C. 2d 563, 72 Cal. Rptr. 665, 446 P. 2d 535 (1968); *Donnenberg v. State,* 1 Md. App. 591, 232 A. 2d 264 (1967); *United States v. Groner,* supra; *United States v. Klaw,* 350 F. 2d 155 (1965).[10]

Elsewhere it has been rejected on the ground that obscenity vel non is an ultimate fact issue to be decided by the trier(s) of fact alone without opinion evidence. *Stroud v. State,* Ind. App. , 273 N.E. 2d 842 (1971).[11] See also, Lockhart & McClure, Censorship

[10] Support for the proposition can also be found in the law commentaries. See e.g., Monaghan, Obscenity 1966; The Marriage of Obscenity Per Se and Obscenity Per Quod, 76 Yale L. J. 127, 153 (1966) : "To the extent that an obscenity prosecution involves other than 'hard-core' pornography, expert testimony on patent offensiveness seems necessary."

[11] In *State v. Amato,* 49 Wis. 2d 638, 183 N.W. 2d 29, review denied 40 L.W. 3346 (1/25/72) the Supreme Court of Wisconsin held that no expert evidence was required on the question of whether three magazines, "Heads Up", "Honey Bun", and "Tulip Review" were obscene. Since these magazines consisted of a collection of photographs depicting explicit sexual activity [as opposed to textual matter in which the meaning and effect of the whole would be relevant] it may well have been that the court was simply determining that the publications were "hard core" pornography. Cf.

of Obscenity: The Developing Constitutional Standards, 45 Minn. L. Rev. 5 (1960), wherein is espoused the notion that appellate judges are as capable as any expert of determining whether material is obscene.

The United States Supreme Court has never confronted directly the issue of whether there is any need for expert or other evidence to establish the elements of the *Roth-Memoirs* test and has in fact dealt with the issue but once and then in a most peripheral fashion.

In *Smith v. California*, 361 U.S. 147, 80 S. Ct. 215 (1959),[12] Mr. Justice FRANKFURTER in a concurring opinion was given to observe at page 165:

"[C]ommunity standards or the psychological or physiological consequences of questioned literature can as a matter of fact hardly be established except through experts. . . .

"There is no external measuring rod for obscenity. Neither . . . is its ascertainment a merely subjective reflection of the taste or moral outlook of individual jurors or individual judges. . . . Their interpretation ought not to depend solely on the necessarily limited, hit-or-miss, subjective view of what they are believed to be by the individual juror or judge. It bears repetition that the determination of obscenity is for the juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of 'contemporary community standards.' "

*Wilhoit v. United States*, 279 A. 2d 505 (D.C. App. 1971), review denied, 10 Cr. L. Rptr. 4094 (12/15/71).

[12] At issue in the *Smith* case was a Los Angeles city ordinance which imposed strict criminal liability on booksellers who possessed obscene material. Holding the ordinance unconstitutional, the Supreme Court said that a defendant criminally charged with purveying obscene material must be shown to have had some kind of knowledge of the character of such material, although the quality of this knowledge was not defined.

Building upon this dictum, the Supreme Court of California in *In Re Giannini,* supra, declared the necessity in that jurisdiction for expert evidence to establish community standards in obscenity prosecutions. The convictions of a topless dancer and nightclub manager were then set aside because the prosecution failed to introduce any evidence of community standards either that the dancer's conduct appealed to prurient interest or offended contemporary standards of decency. Writing for the majority, Justice TOBRINER said: "Relying principally on the well established doctrine that jurors should not be endowed with the prerogative of imposing their own personal standards as the test of criminality of conduct, we hold that expert testimony should be introduced to establish community standards. We cannot assume that jurors in themselves necessarily express or reflect community standards; we must achieve so far as possible the application of an objective, rather than a subjective determination of community standards. An even handed application of the criminal law, even with evidentiary guidance [citation omitted] is sufficiently difficult in an area so confusing and intricate as obscenity. To sanction convictions without expert evidence of community standards encourages the jury to condemn as obscene such conduct or material as is personally distasteful or offensive to the particular juror."[13] 69 C. 2d at 574-75, 72 Cal. Rptr. at 663, 446 P. 2d 543.

---

[13] In 1969 the California Legislature attempted to obviate the strict mandate of *Giannini* through the enactment of Penal Code section 312.1 which provides: "In any prosecution for a violation of the [obscenity or "harmful matter" laws] neither the prosecution nor the defense shall be required to introduce expert witness testimony concerning the obscene or harmful character of the matter which is the subject of any such prosecution. Any evidence which tends to establish contemporary community standards of appeal to prurient interest or of customary limits of candor in the

As was alluded to earlier, lack of probative evidence on the question of obscenity also has the added ramification of rendering the task of the review court well-nigh impossible. As the California court noted: "[E]ven if the jury should be deemed to be a metaphysical embodiment of the 'community' and therefore intrinsically cognizant of community standards, proof of community standards would nevertheless be indispensable to effective appellate review. An appellate court must reach an independent decision as to the obscenity of the material [citation omitted]. Since an appellate court certainly does not in any sense compose a cross-section of the community, it cannot effectively carry out this function in the absence of evidence in the record directed toward proof of the community standard." 69 C. 2d 576, 72 Cal. Rptr. 664, 446 P. 2d 544. The dilemma thus created drew the following comment from Judge THORNBERRY in *United States v. Groner*, supra. "This Court finds itself in the same position as that of the jury in such a case. We cannot take judicial notice, without even a scintilla of evidence, of what constitutes the community standard of decency at this or any other time. If such a standard exists at all, we would expect that it would be in constant evolutionary or even revolutionary flux, the fact of which militates

description or representation of nudity, sex or excretion, or which bears upon the question of redeeming social importance, shall, subject to the provisions of the Evidence Code, be admissible when offered by either the prosecution or by the defense." Cal. Pen. Code Ann. §312.1 (West 1970).

Government agencies and the American Civil Liberties Union supported passage, since both considered the burden and expense of producing expert testimony prohibitive.

One commentary called this legislative enactment an exercise in futility, arguing that in obscenity cases, only expert testimony would be relevant, material and competent. See, Hirsch and Ryan, I Know It When I Seize It: Selected Problems in Obscenity, 4 Loyola L. Rev. 9, 15-18 (1971).

against our exercising uninformed judgment at any particular point in time. At best it would be a matter of pure chance as to whether we as a Court, or as individuals left to our own devices and without the aid of evidence, could determine the correct standard."

Therefore, with the hope of adding a tangible measure of objectivity to the determination of obscenity vel non, we adopt the rule that at least as to other than hard core pornography, there must be introduced by the prosecution evidence of the challenged material's prurient appeal and utter lack of redeeming social value as well as its patent offensiveness. Implicit in such proof is the fact that contemporary community standards will have to be established. [14] Nothing in the aforementioned requirements can or should be interpreted to displace the function of the judge or jury in determining the ultimate question of whether a particular book is obscene.

In essence our action today does nothing more than meet the demands of due process. The penalties for violating the criminal obscenity law of this state encompass the loss of liberty and/or fine.[15] We are asking no more than that the Commonwealth prove the elements of the offense as it must do in every other area of criminal law. Faithfulness to the existing framework of law, both constitutional and criminal, demands that we ask this much and accept nothing less.

---

[14] The question of the proper yardstick for measuring obscenity [local verses national community standards] currently awaits decision by the United States Supreme Court, *Miller v. California*, Unreported, cert. granted, 401 U.S. 992 (1971) (No. 1288) ; argued January 19, 1972 [10 Cr. L. Rptr. 4151, 1/26/72].

We need not embroil ourselves in this debate other than to point out, as was done in *Commonwealth v. Dell Publications, Inc.*, supra, at 202, that the instant case arose out of Allegheny County, one of the nation's more sophisticated areas.

[15] 18 P.S. §4524 provides a term of imprisonment not exceeding two years or a fine not exceeding $2000, or both.

The order of the Superior Court and the Judgments of the Court of original jurisdiction are reversed.

The former Mr. Chief Justice BELL took no part in the consideration or decision of this case.

The former Mr. Justice BARBIERI took no part in the decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result and much of the majority opinion. I agree with the majority's conclusion that this case is governed by our decision in *Commonwealth v. Dell Pub., Inc.*, 427 Pa. 189, 233 A. 2d 840 (1967), cert. denied, 390 U.S. 948, 88 S. Ct. 1038 (1968), and that the controlling principles enunciated in *Dell* require that the judgment of sentence be reversed.

I disagree, however, with the dictum in the majority opinion which suggests that there is a different standard of proof applicable to cases involving "hard core pornography" as opposed to "mere obscenity." The First Amendment simply does not recognize any such distinction. *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304 (1957); *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S. Ct. 975 (1966). Obviously, this Court is without power to do so.

The majority opinion correctly emphasizes that the challenged work can be declared obscene and constitutionally unprotected only if it fails to meet *all* three of the elements set forth in *Roth v. United States*, supra, and amplified by *Memoirs v. Massachusetts*, supra. See *Commonwealth v. Dell Pub., Inc.*, 427 Pa. 189, 198-209, 233 A. 2d 840, 845-51 (1967). Any work whose "dominant theme . . . taken as a whole appeals to a prurient interest in sex"[1] *and* whose "material is patently offensive because it affronts contemporary

---

[1] *Memoirs v. Massachusetts*, 383 U.S. 413, 418, 86 S. Ct. 975, 977 (1966).

community standards"[2] *and* whose "material is utterly without redeeming social value"[3] is by definition "hard core pornography." But this determination can be made only *after*—not *before*—applying the *Roth-Memoirs* test to the challenged work.

Accordingly, in every instance involving allegedly obscene material the burden must be on the Commonwealth, as it is in all criminal cases, to come forth and produce appropriate evidence, see *Commonwealth v. Dell Pub., Inc.,* supra, that the challenged work fails to meet *each* of the separate elements set forth in *Roth* and *Memoirs* and is therefore constitutionally obscene. This burden is not satisfied by the mere production of the allegedly obscene materials. The need for expert evidence to establish that the material is constitutionally unprotected under the *Roth-Memoirs* test was specifically recognized by this Court in *Duggan v. Guild Theatre, Inc.,* 436 Pa. 191, 258 A. 2d 858 (1969), where we observed: "The district attorney in his brief admits that he produced no expert testimony on this issue [contemporary standards], yet urges us to find that the movie affronts contemporary standards. This we cannot do. Courts of law are not capable of deciding what contemporary standards are, without the benefit of any evidence whatsoever." Id. at 201, 258 A. 2d at 863; accord *United States v. Klaw,* 350 F. 2d 155, 167 (2d Cir. 1965) ; *In Re Giannini,* 69 C. 2d 563, 72 Cal. Rptr. 655, 446 P. 2d 535 (1968) ; *House v. Commonwealth,* 210 Va. 121, 169 S.E. 2d 572 (1969).

If the challenged work is in fact "hard core pornography", the Commonwealth should have no difficulty in sustaining its position. With this reservation, I concur in the result.

---

[2] Id.

[3] Id.