Commonwealth *v.* Burak, Appellant.

Argued September 12, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joseph D. O'Keefe,* for appellant.

*Douglas B. Richardson, Paul J. Sullivan, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY WATKINS, P.J., March 31, 1975:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Criminal Section, by the defendant-appellant Marvin Burak, after conviction by a jury of charges of obscene exhibition, disorderly house, conspiracy to conduct an obscene exhibition and corrupting the morals of a minor child. The court below sustained a demurrer to the charges of indecent exposure and open lewdness. Post-trial motions were denied and the defendant was sentenced to not less than six months nor more than 23 months in prison on the conspiracy count and to consecutive 2 year periods of probation on the charges of obscene exhibition and corrupting the morals of a minor child.

On Appeal to this Court, the case was remanded for further argument. The court below arrested judgment on the charge of disorderly house and refused to arrest judgment on the other charges. This appeal followed.

At the outset we must acknowledge the problems faced by trial courts, prosecuting attorneys and litigants in this area of the law which is in constant and most confusing state of flux. Underlying the entire problem is the difficulty which appellate courts have had in defining the word obscenity and until this is done our courts will have to continue to deal with each situation wherein this type of statute is involved on a case-by-case basis.

The facts of the instant case taken in the light most favorable to the Commonwealth reveal that the appellant was the manager of the Camera Arts Club when a police raid was made on the establishment. The testimony established that the club charged a $25.00 membership fee to individuals interested in joining and a further charge of $25.00 for each session and these payments seemed to be the only required qualifications for membership. Upon payment of the fees, members were given certificates of membership which granted their admission to modeling sessions which the club conducted. The purported purpose of the sessions was to permit photographers to pursue their hobby by providing them relatively inexpensive models to photograph.

It was established at trial that the possession of a camera at the so called modeling sessions was not a requisite for viewing. On the night of the raid, six of the nineteen people present at the session did not have cameras. No music or dancing accompanied the performance. After stripping, one of the females, Patricia Johnson, lay in a position exposing her genitals, rubbed her breasts and thighs suggestively and rubbed her private parts against a pole on the stage. The other model stripped and posed nude. It was also established that Patricia Johnson was actually Patricia Nellam who had been born on July 6, 1951 and was therefore under eighteen years of age at the time of this incident.

On appeal, the appellant raises ten issues concerning the validity of the convictions. Most of them are disposed of by our disposition of the obscene exhibition charges. Inter alia, the appellant claims that the modeling session was not an exhibition and therefore not subject to the Act of June 24, 1939, P.L. 872, §528, 18 P.S. §4528, which relates to obscene exhibitions. The Act provides:

> "Whoever gives or participates in, or being the owner of any premises, or having control thereof, permits within or on said premises, any dramatic, theatri-

cal, operatic, or vaudeville exhibition . . . of an obscene nature, is guilty of a misdemeanor . . ."

"An exhibition shall be deemed obscene if, to the average person applying contemporary community standards, its dominant theme taken as a whole appeals to prurient interest."

The appellant reasons that since no music or dancing occurred the activity doesn't fall within the statute. We feel that there was ample evidence for a jury to conclude that the activities by the so called "models" were indeed an exhibition conducted for profit by the manager of the establishment. It is apparent that the acts engaged in were done primarily for the entertainment of the patrons and not to promote any legitimate interest they may have had in photography. We have no trouble in finding that the statute was properly applied to the appellant.

However, the Supreme Court of the United States in *Miller v. California*, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973) held that state statutes which attempt to control obscenity must meet certain standards. Such statutes must provide that:

"A. The average person, applying contemporary community standards must find that the work, taken as a whole, appeals to prurient interest; and

"B. the work must depict or describe in a patently offensive way, sexual conduct specifically defined in the applicable state law; and

"C. the work, taken as a whole, must lack serious literary, artistic, political, or scientific value."

A reading of the pertinent Act, supra, reveals that element "B" of the Miller Test is absent in that the section does not specify nor define the conduct that it prohibits. Therefore under the Miller Test we must hold that the section is unconstitutional because of its possible chilling effect on free expression. See, *Commonwealth v. Winkleman*, 230 Pa. Superior Ct. 265, 326 A. 2d 496 (1974). Therefore the appellant's conviction of Obscene Exhibi-

tion and Conspiracy to Commit an Obscene Exhibition must fall.

The appellant also claims that there was insufficient evidence to convict him of Corrupting the Morals of a Minor Child pursuant to the Act of June 24, 1939, P.L. 872, §532, 18 P.S. §4532, as amended. At trial one Mrs. Wallace definitely identified Miss Patricia Johnson, one of the models, as Patricia Nellam, her daughter. Mrs. Wallace testified that her daughter was born on July 6, 1951 and was therefore under the age of 18 years on the date of the incident. The girl was not produced at trial because she could not be found. A bench warrant was issued for her but could not be served due to lack of knowledge as to her whereabouts. However, the policemen who raided the establishment produced numerous photographs of the girl and it was from these that Mrs. Wallace made her positive identification. The officers also testified in detail as to the activities engaged in by Patricia Nellam. They established that she removed her clothes, rubbed her breasts and private parts, and lay on the floor with her knees spread apart and her hands on either side of her vaginal hair, spreading herself apart. This type of activity continued for 40 minutes.

The Act of June 24, 1939, P.L. 872, §532, 18 P.S. §4532, provided in part that:

> "Whoever, being of the age of eighteen years and upwards, by any act corrupts or tends to corrupt the morals of any child under the age of eighteen years, or who aids, abets, entices or encourages any such child in the commission of any crime, . . . is guilty of a misdemeanor . . ."

"Contributing to the delinquency" and corrupting the morals of a minor" are subject to separate statutes, the latter under the criminal code and the former under the juvenile act. "Contributing to the delinquency" is a broad term involving conduct toward a child in an unlimited variety of ways which tends to produce or to encourage

or to continue the conduct of the child which would amount to delinquent conduct. *Commonwealth v. Stroik,* 175 Pa. Superior Ct. 10, 102 A. 2d 239 (1954). Contributing to the delinquency may be either acts or omissions. *Commonwealth v. Marlin,* 452 Pa. 380, 305 A. 2d 14 (1973). "Tending to corrupt" like "contributing to delinquency" is a broad term involving conduct towards a child in an unlimited number of ways. *Commonwealth v. Meszaros,* 194 Pa. Superior Ct. 462, 168 A.2d 781 (1961). The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected.

For these reasons we hold that the evidence was sufficient to convict the defendant of corrupting the morals of a minor child. Appellant, as manager of the Camera Arts Club, exerted a certain amount of control over the activities therein. Were he a mere ticket collector, as he claimed, it could not be said that he had sufficient control of the premises so as to hold him responsible for the conduct of the performers. However, as manager, he had sufficient control of the premises and the models so that he could be held responsible for their conduct and we have no hesitancy in holding that the appellant be held responsible under the Act, supra, for aiding, abetting and encouraging the acts hereinabove described and so corrupting or tending to corrupt the morals of a minor child.

The judgment of sentence of the court below on the charges of obscene exhibition and conspiracy to commit an obscene exhibition is reversed and the defendant discharged; and the judgment of sentence on the charge of corrupting the morals of a minor child is affirmed.