Commonwealth *v.* Krasner, Appellant.

Argued June 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

2

*Robert E. Levy*, with him *Bruce L. Neff*, for appellant.

*Stewart J. Greenleaf*, Assistant District Attorney, *William T. Nicholas*, First Assistant District Attorney, and *Milton O. Moss*, District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY HOFFMAN, J., December 22, 1975:

Appellant challenges his conviction under §4524 of the Penal Code[1] because §4524 does not specifically define "obscenity" as mandated by *Miller v. California*, 413

---

1. 1939, June 24, P.L. 872, §524; 1957, July 17, P.L. 972, §1; 1959, Oct. 20, P.L. 1329, §1; 1968, July 31, P.L. 892, No. 269, §1; 18 P.S. §4524; superseded by Act of December 6, 1972, P.L. 1482, No. 334, §1; 18 Pa.C.S. §5903.

Section 4524(a) provides:

"(a) Whoever sells, lends, distributes, exhibits, gives away or shows to any person seventeen (17) years of age or older or offers to sell, lend, distribute, exhibit or give away or show, or has in his possession with intent to sell, lend, distribute or give away or to show to any person seventeen (17) years of age or older, or knowingly advertises in any manner any obscene literature, book, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, drawing, photography, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature, or whoever designs, copies, draws, photographs, prints, utters, publishes or in any manner manufac-

U.S. 15 (1973).[2] Consistent with two cases decided recently by our Court, *Commonwealth v. Burak,* 232 Pa. Superior Ct. 499, 335 A.2d 820 (1975); *Commonwealth v. Winkleman,* 230 Pa. Superior Ct. 265, 326 A.2d 496 (1974), which interpreted *Miller,* we must reverse appellant's conviction.

In 1971, appellant was the owner and operator of an "adult book store" in the Graeme Park Shopping Center, Horsham, Montgomery County. On December 16, 1971, several members of the state police force entered appellant's store in order to execute a search warrant. Pursuant to that warrant, the police seized various books, magazines, records, and films including several $.25 "peep shows" operated on the premises. Police arrested appellant and Ignatius Joseph Pitz, Jr., a clerk working in the store when the police arrived.

On January 7, 1972, appellant and Pitz appeared for a preliminary hearing and were bound over for action

---

tures or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, figure, image, matter, article or thing or whoever writes, prints, publishes or utters or causes to be printed, published or uttered, any advertisement or notice of any kind giving information, directly or indirectly, stating or purporting to state where, how, or whom, or by what means any obscene book, picture, writing, paper, comic book, figure, image, matter, article or thing named in this section can be purchased, obtained or had, or whoever hires, employs, uses or permits any minor or child to do or assist in doing any act or thing mentioned in this section, is guilty of a misdemeanor, and upon conviction, shall be sentenced to imprisonment not exceeding two (2) years, or to pay a fine not exceeding two thousand ($2000) dollars, or both.

" 'Obscene,' as used in this section, means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest."

2. Appellant also contends that motion pictures are not proscribed under the law of Pennsylvania. Subsection (a) prohibits exhibition of any "photographs, figure or image, . . . or instrument

by the Grand Jury. The Grand Jury returned bills charging appellant and Pitz with unlawful possession of obscene literature with intent to sell, (No. 725), with the exhibition of obscene moving pictures, (726), and with conspiracy, (727). Thereafter, appellant and Pitz were tried before the lower court sitting without a jury, from April 9, 1973, until April 27, 1973. The lower court found appellant and his co-defendant guilty on all charges. Motions in arrest of judgment and for a new trial were denied. On January 24, 1975, appellant was sentenced to six months to two years' imprisonment and to pay a fine of $2,000 on bill No. 725, to six months to two years' imprisonment (to run concurrently with sentence imposed on No. 725) and to pay a fine of $1,500 on bill No. 726, and to pay a fine of $500 on bill No. 727. This appeal is from that judgment of sentence.

A host of United States Supreme Court decisions have attempted to clarify obscenity law: "This [*Miller v. California*, supra,] is one of a group of 'obscenity-pornography' cases being reviewed by the Court in a re-examination of standards enunciated in earlier cases involving what Mr. Justice HARLAN called 'the intractable obscenity problem.' . . . [T]he Court now undertakes to formulate standards more concrete than those in the past. . . ." 413 U.S. at 16-20. See also, *Jenkins v. Georgia*, 418 U.S. 153 (1974) ; *Hamling v. United States*, 418 U.S. 87 (1974) ; *Paris Adult Theater I v. Slaton*, 413 U.S. 49 (1973) ; *United States v. 12 200-ft. Reels of Super 8mm.*

---

of an obscene nature. . . ." Subsection (b) prohibits sale or loan for money to *minors* "any picture, photograph, . . . motion picture film. . . ." Thus appellant argues that the legislature in amending the statute in 1968 (when distribution of pornography to minors was specifically proscribed) could have included "motion picture films" under subsection (a), but did not do so. This position was specifically rejected in *Commonwealth v. MacDonald*, 464 Pa. 435, 347 A.2d 290 (1975).

*Film,* 413 U.S. 123 (1973); *United States v. Orito,* 413 U.S. 139 (1973); *Kaplan v. California,* 413 U.S. 115 (1973).[3]

The Court in *Miller* stated the following caveat: "We acknowledge ... the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. See *Interstate Circuit, Inc. v. Dallas,* [390 U.S. 676 (1968)]. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed." 413 U.S. at 23-24. The Court then formulated the following three-pronged definition of obscenity: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, ...; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24. Such specific definition of prohibited material is necessary to "provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." 413 U.S. at 27. Cf. *Bouie v. City of Columbia,* 378 U.S. 347 (1964).

Section 4524 of the Penal Code, supra, was amended

---

3. Cf. *Commonwealth v. LaLonde,* 447 Pa. 364, 369-370, 288 A.2d 782, 785 (1972): "In recent years the United States Supreme Court has on at least twenty-nine occasions reversed obscenity convictions and determinations involving various kinds of expression . . . on the authority of its cryptic opinion in *Redrup v. New York,* 386 U.S. 767, 87 S. Ct. 1414 (1967)." (See footnote 6 for citations.) Given the penchant of the Court to reverse obscenity convictions until 1971 and its current vigor in affirming such conviction, (see *Miller* supra, and its progeny), we are inclined to agree that the state of obscenity law is "akin 'to a riddle wrapped in a mystery inside an enigma'." *LaLonde,* at 368, 288 A.2d at 784.

on October 20, 1959,[4] to conform to the standards articulated in *Roth v. United States,* 354 U.S. 476 (1957): "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Memoirs v. Massachusetts,* 383 U.S. 413, 418 (1966). The 1959 amendment, inter alia, added the following: " 'Obscene,' as used in this section, means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest." *Miller* altered the *Roth* criteria in at least two respects. The Court rejected the " 'utterly without redeeming social value' test . . ." and held that a work may be obscene if, taken as a whole, it lacks serious literary, artistic, political or scientific value. But the Court also expanded the first and second prongs of the *Roth* test. Under *Miller,* it is not sufficient that the finder of fact believes that material affronts community standards; the challenged material must (a) depict "sexual conduct specifically defined by the applicable state law" and (b) it must do so in a patently offensive manner. 413 U.S. at 24. See also, *Jenkins v. Georgia,* supra. Although appellant in the instant case was tried before the Supreme Court announced its decision in *Miller,* the Court has made clear that any defendant whose case is on appeal may claim full benefit of the *Miller* holding. *Jenkins v. Georgia,* supra; *Hamling v. United States,* supra.

Thus, the question for decision becomes whether the proscribed conduct (the alleged "obscenity") is specifically defined by Pennsylvania law.[5] Two recent cases in this Court have addressed and answered an analogous

---

4. Oct. 20, 1959, P.L. 1329, §1.

5. Cf. Oregon Laws 1971, c. 743, Art. 29, §§255-262, for a more comprehensive definition of proscribed conduct.

problem under §§4519 and 4528 of the Penal Code, supra. *Commonwealth v. Burak,* supra; *Commonwealth v. Winkleman,* supra. Section 4528 tracks the definition of "obscene" found in §4524: "An exhibition shall be deemed obscene if, to the average person applying contemporary community standards, its dominant theme taken as a whole appeals to prurient interest." This Court (per WATKINS, P.J.) stated in *Commonwealth v. Winkleman,* supra, at 268, 326 A.2d at 497: "In *Smith v. Crumlish,* 207 Pa. Superior Ct. 516, 218 A.2d 596 (1966), this Court held that the section was constitutional under the standards then in effect as enumerated by the United States Supreme Court. However, since our decision in *Smith,* supra, the United States Supreme Court has undertaken to redefine the constitutional limitations on state statutes which attempt to control public indecency and obscenity.

"The case of Miller v. California, [supra], established . . . guidelines for the trier of facts in cases involving possible restrictions of First Amendment freedoms. . . .

"It is apparent that under such standards both 18 P.S. §4519 and 18 P.S. §4528 are unconstitutional as applied to the defendant in this case."

The governing law in the instant case is identical to that in *Winkleman.* We declined in *Winkleman* and *Burak* to rewrite §4528 of the Penal Code, supra, so that it comported with *Miller.*[6] Therefore, because §4524 of the Code similarly fails to define "obscenity" so that it comports with *Miller,* appellant's conviction must be reversed.

Judgment of sentence is reversed and appellant is discharged.

------

6. In *Commonwealth v. MacDonald,* supra, the Supreme Court similarly refused to rewrite our obscenity laws to comport with *Miller:* "What the Commonwealth urges is not mere construction but wholesale rewriting. The proposed construction is not even *a* possible meaning of the words of the statute when used in their ordinary senses." 347 A.2d at 298. *MacDonald* dealt with a different section of the Crimes Code; nevertheless, the same reasoning is applicable to the instant case.